UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARIO ORDONEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>DR. BRUCE O. BURNHAM,<br><br>    Defendant. | **MEMORANDUM DECISION<br>& ORDER DENYING<br>BCJ DEFENDANTS'<br>SUMMARY-JUDGMENT MOTION &<br>GRANTING DEFENDANT BURNHAM'S<br>SUMMARY-JUDGMENT MOTION**<br><br>Case No. 2:14-CV-630 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Motions for Summary Judgment. (*See* Docket Entry # 48 & 62.) For the reasons discussed below, the Court denies Beaver County Jail (BCJ) Defendants' motion and grants Defendant Burnham's motion.

**UNDISPUTED FACTS**

Plaintiff was an inmate at Beaver County Jail (BCJ). Defendants Bastian and Sidwell were officers working at BCJ.[1] Defendant Burnham was a Utah Department of Corrections (UDOC) doctor who cared for inmates at BCJ once per week.

On August 7, 2010, Inmate M punched Plaintiff in the face, injuring Plaintiff's nose. BCJ Defendants were on duty during the attack and took Plaintiff to see the nurse right away. Plaintiff later saw Defendant Burnham for medical treatment regarding his nose injury.

---

[1] Keith Draper of BCJ was also named as a defendant but has since died. (*See* Suggestion of Death, Docket Entry # 29.) Draper is thus no longer part of this case.

## PROCEDURAL HISTORY

Plaintiff's Complaint, (Docket Entry # 6), alleges Defendants violated his Eighth (cruel and unusual punishment) and Fourteenth (equal protection) Amendment rights under the Federal Constitution.  Responding to the Complaint, as ordered by the Court, (Docket Entry # 13 ), Defendants filed *Martinez* reports, (Docket Entry #s 43 , 45, 52, 53, 55, & 56), and Motions for Summary Judgment, (Docket Entry #s 48 & 62).  Plaintiff responded to the reports and motions.  (See Docket Entry #s 64, 69, 72, 73.) The Court has thoroughly reviewed these documents and all others on the docket in rendering this decision.

## SUMMARY-JUDGMENT STANDARD

"'[I]f the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law'" summary judgment is appropriate. *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting Fed. R. Civ. P. 56).  The moving party has the original burden to show an absence of evidence supporting a crucial element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998); *see also Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997) ("The moving party need not affirmatively negate the nonmovant's claim in order to obtain summary judgment.  Instead, the movant only bears the initial burden of showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." (Internal quotation marks & citations omitted.)).  The Court must consider the factual record and the inferences derived from those facts in the light most favorable to the nonmoving party. *Johnson*, 996 F. Supp. at 1102.

If the movant carries its initial burden, the nonmovant cannot rest upon his pleadings, but must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (quoting Fed R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004) (citation omitted).

## DISCUSSION

### 1. STATUTE OF LIMITATION

Defendants first argue Plaintiff's claims should be dismissed based on the four-year statute of limitations applicable to federal civil-rights cases filed in this Federal Court. *See Sheets v. Salt Lake County*, 45 F.3d 1383, 1387 (10th Cir. 1995) (holding that four-year statute of limitations now codified at Utah Code Ann. § 78B-2-307 (2016) applies to federal civil-rights actions).

Plaintiff's claims apparently accrued starting on August 7, 2010, the day of the attack. Defendants point out that his civil-rights complaint was not "filed" until September 2, 2014; however, there is also a date stamp of August 1, 2014, on the first page of the Complaint that says, "RECEIVED CLERK." Defendants do not flesh out how that may affect the statute of limitations, including an argument about the mailbox rule or any other applicable principle.

Summary judgment is thus denied on this issue.

## 2. EXHAUSTION DEFENSE

There is potentially a dispute of material facts on this issue. To be sure, Defendants have offered documentary evidence that Plaintiff did not properly exhaust. Their evidence--including declarations, the grievance policies for both BCJ and UDOC, and actual copies of Plaintiff's level-one grievance at BCJ and BCJ's response--is impressive.

It is contested by Plaintiff's sworn affidavit in which he gives very specific information about the grievances he filed. "On Wendesday, August 11, 2010, my friends helped me to filed a grievance, (which at the time, I didn't know the grievance process) . . . . (This was grievance Level # 1)." [Sic] (Plaintiff's aff., Docket Entry # 11, at 3.) This would have apparently met the seven-day deadline for filing a grievance regarding the attack. Plaintiff goes on to aver that on August 17, 2010, "Caseworker Jay Barton, Lt. Draper, Sgt. Messenger and other officers . . . told [Plaintiff] that [his] grievance was denied." (*Id.*)

He further states that he filed "grievance # 2 . . . on 8-18-10, . . . which it got denied or rejected stating that I couldn't filed grievance # 2 because grievance # 1 had been denied!" (*Id.* at 7.) By August 23, 2010, he still "hadn't received any written response to [his] grievance # 2," but asserts that on August 20, 2010, he "got yelled at by Lt. Draper and Sgt. Messenger to stop sending grievances." (*Id*. at 8.) His story continues that he was helped by another inmate "who was coaching [him] in this matter" and told him "to wait for 21 days (working days) for a response if [he] didn't get a response or if [he] got a response in 21 working days" then "if [he] didn't like it to filed grievance # 3." (*Id*.)

Plaintiff says that "[o]n or about September 15, 2010, after waiting for a response from the grievance coordination, which I never got, my friend helped me to filed Level 3 grievance,

4

asking for the same thing." [Sic] (*Id*.) He says that "after [his] level 3 grievance, nothing was ever the same for [him], the guards made sure that [he] was living hell and they made things up just to keep me in the hole." (*Id*. at 9-10.)

Plaintiff also explains why he has not submitted copies of these grievances to offset Defendants' very different story of his grievance process (submitted at level one only):

> On about December 5, 2011, I was transferred out of Beaver County, but the guards confiscated all my legal paper work stating that I was not allowed to carry anything that was conserning Beaver County Jail, so they only let me take with me personal letters from my family and friends, but everything else they kept, . . . Therefore I don't have any records of my grievances and I have requested them in a grama to Records, but those records have been denied to me, and I have written to Beaver County Jail asking for copies of my grievances, but, I have not received a reply. Therefore, I am asking/requesting this court to please help me get those records of grievances from Beaver County Jail. [Sic]

(*Id*. at 10.)

Based on this disparity in the parties' factual submissions, the Court requires more information from the parties before it will again consider granting summary judgment to Defendants on this issue. Such information should include, but not necessarily be limited to, details about record-keeping on grievance issues and what inmates are allowed to take with them when transferring out of BCJ to another facility.

In the meantime, Defendants' motion for summary judgment on the issue of Plaintiff's alleged failure to exhaust his administrative remedies is denied. If they wish, BCJ Defendants may within sixty days renew their motions with further evidentiary submissions as needed to better carry their burden.

### 3.  FAILURE TO PROTECT

To succeed on a "failure to protect" theory for his Eighth Amendment claim relating to the attack by Inmate M, Plaintiff would have to show that Defendants Bastian and Sidwell (i) actually knew about an "excessive risk" to his health or safety, *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000), and (ii) were deliberately indifferent to--i.e., consciously disregarded--that risk, *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001).

The parties' declarations are at odds as to whether Defendants Bastian and Sidwell were unaware, during the attack, of any risk posed to Plaintiff's health or safety and whether there was an "excessive risk." Indeed, Defendants state they were not aware of the attack while it was happening and therefore could not intervene. Meanwhile, Plaintiff asserts in his submissions that Defendants passively watched the attack, without offering to help him.

Based on the evidence supporting the summary-judgment motions at hand, the Court cannot say there is no dispute as to the material facts of Defendants' possible "deliberate indifference" to any known "excessive risk[s]" to Plaintiff's health necessary to prove liability as to the attack. Defendants argue in their summary-judgment motion that "the evidence shows that the Beaver County Defendants had no knowledge of the fight until after it was over. As such, the Beaver County Defendants did not violate Inmate Ordonez's Eight Amendment rights." (BCJ's Sum J. mot. at 14.) The evidence spoken of here is apparently the declarations of BCJ Defendants swearing that they did not see the fight. But then, Plaintiff's affidavit swears that BCJ Defendants did see the fight and could have intervened to help him. Details as to how it would have been possible or impossible for BCJ Defendants to have seen the fight or for Plaintiff to know BCJ Defendants saw the fight and could have helped are lacking.

The way things stand now, it is BCJ defendants' sworn word against Plaintiff's sworn word. Thus, a dispute of material fact exists. Summary judgment is therefore denied. If the BCJ defendants are able to gather more evidentiary support for their arguments on this issue, they may use that to renew their request for summary judgment within sixty days.

For now, though, BCJ Defendants' motion for summary judgment on the merits of Plaintiff's failure-to-protect claim is denied.

### 4.  INADEQUATE MEDICAL TREATMENT

Plaintiff contends that Defendant Burnham failed to properly diagnose and treat him for an alleged broken nose and was otherwise deliberately indifferent to his serious medical needs. Plaintiff asserts this lack of proper treatment constitutes cruel and unusual treatment under the Eighth Amendment.

#### a.  SUMMARY JUDGMENT REDUX & QUALIFIED-IMMUNITY STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(a). Factual assertions may be supported by,

> citing to parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at 56(c)(1). A primary purpose of the summary-judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett,* 477 U.S. 317, 323-24 (1986).

7

Ordinarily, the party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998).

However, when a defendant asserts qualified immunity at summary judgment, the standard-Rule-56 burden shifts from the moving defendant to the plaintiff. Plaintiff then has the heavy burden to show that: "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). Here, Plaintiff has done nothing to rebut qualified immunity.

### b. UNDISPUTED FACTS

1. On August 23, 2010, during a routine visit to BCJ, Defendant Burnham called on Plaintiff based on a medical request for Defendant to examine his injured nose. (*See* Burnham Decl., Docket Entry # 52, exh. 1, at 2.)

2. Defendant Burnham observed no abnormalities--i.e., straight nose with no deformities or swelling. Defendant determined x-rays, pain medications and further treatment were not warranted. (*See id*.; medical records, Docket Entry # 63, at 30)

3. Seeing no need, Defendant denied Plaintiff's request for nose drops. (*See id*.)

4. On November 3, 2010, Defendant again treated Plaintiff at BCJ. (*See id*. at 3.)

5. Defendant's examination revealed Plaintiff's nose to be cosmetically straight with no need of further treatment. Defendant reluctantly supplied nasal spray at Plaintiff's insistence, although Defendant deemed it unnecessary. (*See id.*)

6. That was the last time Plaintiff requested treatment for his nose injury. (*See id.*)

7. Defendant did not prescribe pain killers for Plaintiff, nor take him to the hospital, during his treatment of Plaintiff's nose injury. (Plaintiff's Resp. to Defendant's Summary-Judgment Motion, Docket Entry # 64, at 2.)

### c. ANALYSIS

**• Defendant Was Not "Deliberately Indifferent" to Plaintiff's Medical Needs.**

To succeed in this claim under the Eighth Amendment, Plaintiff must demonstrate acts or omissions harmful enough to show deliberate indifference that offends "'evolving standards of decency.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted). That amendment proscribes only deliberate indifference constituting the "'unnecessary and wanton infliction of pain.'" *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion)). Moreover, Plaintiff must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to *serious* medical needs." *Id.* at 104 (emphasis added). Plaintiff has to show that Defendant's actions were more than negligent. After all, negligent failure to give sufficient medical care, even touching medical malpractice, does not equal a constitutional violation. *Id.* at 106.

The deliberate-indifference standard from *Estelle* has an objective component asking whether the alleged deprivation is "sufficiently serious," and a subjective component asking whether the defendant official "knows of and disregards an *excessive* risk to inmate health or

safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). The subjective component necessarily questions whether prison officials acted with a "sufficiently culpable state of mind." *Clemmons v. Bohannon*, 956 F.2d 1523, 1525-26 (10th Cir. 1992); *see Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996). "[E]ven if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate the risk." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Thus, to state an Eighth Amendment claim, Plaintiff must show he suffered from a serious condition that Defendant knew about and ignored, and that by ignoring Plaintiff's condition, or failing to take reasonable steps to alleviate the risk, Defendant caused Plaintiff serious physical harm or the unnecessary, wanton infliction of pain.

Here, Plaintiff's claims fail because Defendant did not disregard a substantial risk of serious harm to Plaintiff's health or safety from seizure activity. Rather, at each of two visits (August 23 and  November 23, 2010), Defendant answered Plaintiff's medical requests and evaluated him, observing his nose to be straight, with no deformities or swelling. (Burnham Decl. ¶¶ 7, 11 ) During the examinations, applying his professional training and experience, Defendant ruled out the need for x-rays and pain medication, among other possible forms of medical intervention. (*Id*.) Based on Plaintiff's insistence only, Defendant ordered Plaintiff nasal spray during  second visit. (*See id*.)

- **Plaintiff Received Prompt, Frequent, and Reasonable Medical Care. Disagreement with Diagnosis and Treatment Does Not Support Deliberate Indifference Claim.**

When the only dispute about a prisoner's medical treatment regards adequacy, "courts are generally reluctant to second guess [professional] medical judgments." *Maez v. Merrill*, No. 2:07-CV-986 TC, 2008 U.S. Dist. LEXIS 72842, at * (D. Utah September 23) (unpublished)

(quoting *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980)); *see Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972). It is well settled in the Tenth Circuit that mere disagreement between a prisoner and prison medical staff as to diagnosis or treatment does not support a deliberate-indifference claim. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *LeDoux v. Davies*, 961 F.2d 1536, 1536 (10th Cir. 1992); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). Eighth Amendment violations occur only when medical treatment is so grossly incompetent, inadequate, or excessive as to "'shock the conscience or be intolerable to fundamental fairness.'" *Whitehead v. Burnside*, No. 10-11911, 2010 U.S. App. LEXIS 23794, 403 F. App'x 401, 403 (unpublished) (11th Cir. Nov. 17) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). An inmate's belief that he should have been treated differently does not show "deliberate indifference." *Scott v. Gibson*, No. 01-7133, 2002 U.S. App. LEXIS 9647, 37 F. App'x 422, 423 (unpublished) (10th Cir. May 21) (citing *Olson*, 9 F.3d at 1477).

Here, Plaintiff's claims are, at best, a "difference of opinion" as to diagnosis and treatment. *See Olson* 9 F.3d at 1477. Nothing in Plaintiff's medical records appears to support any particular diagnosis. Still, when Plaintiff reported some minor symptoms, he was prescribed nose spray. Further, Plaintiff's allegations that he did not receive proper, adequate and necessary medical care are nothing more than Plaintiff's differing opinion as to the judgments made by a medical professional who evaluated Plaintiff's condition over a several-week period.

The Tenth Circuit has rejected inmate Eighth Amendment claims like those here. *Mosley v. Snider*, No. 00-6310, 2001 U.S. App. LEXIS 4360, 10 F. App'x 663, 664-65 (unpublished) (10th Cir. March 22) (stating mere disagreement with treatment does not

implicate Eighth Amendment when doctor decided medication not needed and inmate declined alternative); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (rejecting deliberate indifference when doctor would not prescribe treatment recommended by other doctor).

As a matter of law, offering treatment or lack of treatment, based on a professional's medical judgment, even if it is not what an inmate wants, does not rise to the level of deliberate indifference. *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006) ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist . . . [W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law."). Also, when records show an inmate has been monitored, attended to, and treated often, the inmate cannot show deliberate indifference. *Wingfield v. Robinson*, No. 10-cv-01375, 2011 U.S. Dist. LEXIS 125825, at *32 (D. Colo. August 10) (missing subjective intent for deliberate indifference when defendants responded to grievances, examined plaintiff, and prescribed treatment more than fifteen times). Here, Plaintiff's nose was evaluated twice by Defendant, who saw no problems with it or need for treatment.

- **Qualified Immunity Applies; Treatment Not Unreasonable or Conscience Shocking.**

Plaintiff sues Defendant because he disagrees with diagnosis and treatment plans (or lack thereof in this case. (Compl. ¶ 12.) The United States Supreme Court has held that "protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v.*

*Callahan*, 555 U.S. 223, 815 (2009) (citation omitted). The Tenth Circuit has similarly held that qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity may be denied if, on an objective basis, it is obvious that no reasonably competent official would have concluded that the actions were constitutional. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). But "'if off[icials] of reasonable competence could disagree' about the lawfulness of the challenged conduct, then '[qualified] immunity should be recognized.'" *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006) (quoting *Malley*, 475 U.S. at 341). Further, when the medical community disagrees as to the best treatment plan, an informed judgment as to appropriate treatment does not amount to deliberate indifference. *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986).

Here, even if Plaintiff could prove that alternative treatment was medically appropriate, Plaintiff still cannot meet his burden of showing Defendant was unreasonable in relying on his own judgment and administering treatment accordingly (i.e., initial and follow-up examinations and nose spray). Defendant did not merely ignore Plaintiff's concerns. Defendant merits qualified-immunity protection.

## CONCLUSION

**IT IS ORDERED that**:

(1) BCJ Defendants' Motion for Summary Judgment is **DENIED**. (Docket Entry # 48.) If after developing their case further, Defendants wish to renew their summary-judgment motion, Defendants must file a new summary-judgment motion within sixty

days. If Defendants determine not to file for summary judgment again, they must file an intention to go to trial and scheduling proposal within sixty days.

(2) Defendant Burnham's Motion for Summary Judgment is **GRANTED**. (*See* Docket Entry # 62.) Defendant Burnham is **DISMISSED** from this case.

(3) Plaintiff's motion for subpoena duces tecum is **GRANTED** in part and **DENIED** in part. (*See* Docket Entry # 36.) It is granted in that Defendants shall supply every grievance document regarding Plaintiff during his stay at BCJ. It is denied in regard to every other type of document sought by Plaintiff in this motion.

(4) Defendants' motions to quash Plaintiff's motion for subpoena duces tecum are **DENIED** as moot. (*See* above; Docket Entry #s 32 & 39.)

(5) Plaintiff's motion for administration of medication is **DENIED**. (*See* Docket Entry # 63.) The motion is vague and appears to be an attempt to circumvent the opinions of medical professionals. If this request involves medications not related to the assault at issue here, Plaintiff is advised to bring any unrelated claims he wishes to pursue in a separate civil-rights complaint. The Clerk of Court shall send Plaintiff a packet of information, along with a blank-form civil-rights complaint to complete to potentially pursue another cause of action.

(6) Plaintiff's second motion for appointed counsel, (*see* Docket Entry # 65), is **DENIED** for the same reasons the Court denied his original motion for appointed counsel, (*see* Docket Entry # 5).

(7) Plaintiff's motions for jury trial are **DENIED**. (*See* Docket Entry #s 71, 72 & 76.) These are inappropriate at a time when other procedural avenues are being pursued for disposition and the possibility of a trial is uncertain.

(8) Plaintiff's motion for another subpoena duces tecum is **DENIED**. (*See* Docket Entry # 71.)

(9) Plaintiff's motion to strike a state response is **DENIED**. (*See* Docket Entry # 76.)

DATED 29th day of March, 2017.

BY THE COURT:

JUDGE TED STEWART
United States District Court